[No. B108188. Second Dist., Div. One. Aug. 22, 1997.]

LEONARD LAVIN et al., Plaintiffs and Respondents, v.
CALIFORNIA HORSE RACING BOARD, Defendant and Appellant.

■■■■■■■■■■■■■■■■

COUNSEL

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Cyrus J. Rickards, and Daniel G. Stone, Deputy Attorneys General, for Defendant and Appellant.

Wallace & Schwartz, Steve R. Schwartz and George M. Wallace as Amici Curiae on behalf of Defendant and Appellant.

Richard W. Craigo, Gibson, Dunn & Crutcher and Robert Forgnone for Plaintiffs and Respondents.

OPINION

DUNN, J.*—The California Horse Racing Board appeals from the judgment of the superior court of October 23, 1996, ordering that a peremptory writ of mandamus pursuant to Code of Civil Procedure section 1094.5 issue commanding appellant to vacate its decision of December 15, 1995, by which it determined that three horses were disqualified and their purses forfeited.

A. FACTS

Lady Blessington and Water Prospector are two horses which finished first in races at Santa Anita Race Track on February 27, 1994, and March 9, 1994, respectively. On April 9, 1994, Top Rung finished second in a race at Santa Anita Race Track. The California Horse Racing Board (hereinafter CHRB) took from each horse a postrace urine sample which was tested for the presence of foreign substances at a private laboratory. The laboratory reported that each of the samples contained evidence of the presence of a prohibited drug, scopolamine, a plant alkaloid which is a depressant. The CHRB, acting through its board of stewards, commenced administrative proceedings against the trainers of each of the horses, alleging violations of CHRB rules.[1] On October 31, 1994, the stewards found that there had been violations and each trainer was fined. In addition, acting upon the authority of CHRB rule 1859.5,[2] the stewards ordered that each of the horses be disqualified and their owners, respondents herein, were ordered to return the purses earned by their horses.

---

*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]The rules and regulations of the CHRB are compiled in the California Code of Regulations, title 4, sections 1400-2063.

[2]CHRB former rule 1859.5 provided: "A finding by the stewards that a test sample from a horse participating in any race contained a prohibited drug substance determined to be a stimulant, depressant, local anesthetic or narcotic substance, whether natural or synthetic or a

The rulings of the stewards were appropriately appealed by the trainers and owners, and a full hearing with counsel was had before an administrative law judge. On October 19, 1994, a proposed decision was presented to the CHRB by the administrative law judge for its consideration. That proposed decision was adopted by the CHRB, and its findings of fact and decision followed, effective December 18, 1995.

The CHRB found that the scopolamine in the postracing urine samples came from bedding straw which was contaminated with jimsonweed, a native grain plant which is a natural source of scopolamine. The subject horses were exposed to the plant as a result of its presence in straw bedding which was used for the horses. The amount of the drug found in each urine sample was minute, ranging from 15 to 47 nanograms.[3] These minute amounts were not likely to have any pharmacological effect on the horses. The trainers and their employees were unaware of the contaminating plant material and therefore could not have prevented the use or ingestion by their horses of the jimsonweed plant material. The CHRB found that the scopolamine was not "administered to the horse" within the meaning of the CHRB rules. By its decision, the CHRB exonerated the trainers but affirmed the disqualification of appellants' horses and the forfeiture of the purses pursuant to rule 1859.5.

On January 16, 1996, respondents Lavin and Clay filed with the Los Angeles Superior Court a petition for writ of administrative mandamus. After hearing on noticed motion, the court issued its peremptory writ directing the CHRB to vacate its decision of December 15, 1995, and to reconsider its action in light of the court's statement of decision. That statement of decision provided, in substance, that the clear and unambiguous language of Business and Professions Code section 19582.5[4] required that the CHRB employ its discretion prior to disqualifying any horse and forfeiting a purse due to the presence of a prohibited substance. The statement provided also that "by doing away with that discretion, rule 1859.5 impermissibly conflicts with the provisions of Business and Professions Code

---

metabolite or analog thereof, shall require disqualification of the horse from the race in which it participated and forfeiture of any purse, award, prize or record for such race and the horse shall be deemed unplaced in that race. Disqualification shall occur regardless of culpability for the condition of the horse." (Cal. Code Regs., tit. 4, § 1859.5, Register 95, No. 32 (amended eff. Sept. 9, 1995).)

[3] A nanogram is one-billionth the weight of a gram.

[4] Business and Professions Code section 19582.5 provides: "The board may adopt regulations that prohibit the entry in a race of a horse that tests positive for a drug substance in violation of Section 19581. Upon a finding of a prohibited drug substance in an official test sample, a horse may be summarily disqualified from the race in connection with which the drug sample was taken. Upon the disqualification of a horse pursuant to these regulations, any purse, prize, award, or record for that race shall be forfeited."

section 19582.5." On November 1, 1996, the superior court issued its peremptory writ of mandamus, remanding the cause to the CHRB for reconsideration in accord with the ruling of the court. This appeal ensued.

## B. ISSUE ON APPEAL

Does CHRB regulation 1859.5, mandating disqualification of a horse and forfeiture of any purse where there is a finding that the horse ran with drugs in its system, conflict with section 19582.5 of the Business and Professions Code which contains a discretionary disqualification provision?

## C. CONTENTIONS OF THE PARTIES

■ Appellant contends that the rule which they have enacted is not contrary to and does not conflict with the statute. Their no tolerance policy is an exercise of their discretion, and it effects the command of the Horse Racing Law[5] to preserve and enhance the integrity of horse racing.

Respondents urge that theirs is a case where the CHRB should exercise its discretion in favor of nondisqualification of their horses and purses because of the finding that the offending drug was introduced into the systems of the horses as a result of accidental exposure to it due to environmentally contaminated straw bedding. Since there was no culpable act on the part of respondents, the CHRB is mandated by Business and Professions Code section 19582.5 to exercise its discretion in cases such as this one. The CHRB rule is one of automatic disqualification irrespective of exculpatory facts and as such conflicts with section 19582.5. They argue that the Horse Racing Law controls over any contrary rule of the CHRB and CHRB rules must be consonant with the provisions of the Horse Racing Law. It was the intent of the Legislature in enacting section 19582.5, they urge, that forfeiture of purses occur only as a result of the exercise of discretion by the CHRB, not by automatic forfeiture in all cases.

## D. STANDARD OF REVIEW

■ The facts are undisputed in this case and the issue before us is one of law. Where the issue is the proper application of an administrative regulation, a problem of statutory construction, the reviewing court acts independently and is not bound by the trial court's determinations. (*Killian* v. *City*

---

[5]Business and Professions Code section 19400 provides: "This chapter is known and may be cited as the 'Horse Racing Law.' " In 1933, this statutory scheme was enacted (Stats. 1933, ch. 769, p. 2046) and subsequently ratified by Constitutional Amendment, article IV, section 25a; it was later codified as Business and Professions Code sections 19400-19663 (Stats. 1941, ch. 47, p. 659).

*and County of San Francisco* (1978) 77 Cal.App.3d 1, 7 [143 Cal.Rptr. 430]; *Shoban* v. *Board of Trustees* (1969) 276 Cal.App.2d 534, 541 [81 Cal.Rptr. 112].)

## E.  DISCUSSION

It is our determination that rule 1859.5 does not conflict with Business and Professions Code section 19582.5 (all section references hereinafter are to the Business and Professions Code) and is consistent with and a permissible exercise of the authority conferred by the Legislature upon the CHRB. Accordingly, we reverse the judgment rendered by the trial court.

The State of California regulates horse racing pursuant to the state's plenary police power. (*Flores* v. *Los Angeles Turf Club* (1961) 55 Cal.2d 736, 741 [13 Cal.Rptr. 201, 361 P.2d 921].) The CHRB has been vested with jurisdiction and supervision over the racehorse meetings (§ 19420) and with the responsibility to carry out the provisions of the Horse Racing Law by prescribing "rules, regulations, and conditions . . . under which all horse races with wagering on their results shall be conducted in this State." (§ 19562.) The rulemaking power of the CHRB is likewise plenary. (*Flores, supra,* at p. 741; *Epstein* v. *California Horse Racing Board* (1963) 222 Cal.App.2d 831, 835 [35 Cal.Rptr. 642].) " '[I]t is no longer open to question that the Legislature . . . and the state Constitution . . . have, in the exercise of the state's conceded police power to regulate race tracks, validly delegated plenary rule-making power to the racing board. . . .' " (*Ibid.*, citations omitted.)

It is well recognized that the legislative body may delegate authority to an administrative body in this fashion, vesting it with the power to adopt and enforce reasonable rules in order to effectuate an expressed purpose of a statute. (*Sandstrom* v. *Cal. Horse Racing Board* (1948) 31 Cal.2d 401, 407-408 [189 P.2d 17]; accord, *So. Cal. Jockey Club* v. *Cal. Horse Racing Bd.* (1950) 36 Cal.2d 167, 170-171 [223 P.2d 1].) The plenary power of the CHRB may be reviewed by this court only to the extent of making a determination of whether the exercise of that power by the CHRB is reasonable. (*Sandstrom, supra,* at pp. 407-408.)

It is a well-settled principle of administrative law that in the absence of an express statutory directive to the contrary, an administrative agency may exercise its discretion in selecting the methodology by which it will implement the authority granted to it. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 413 [128 Cal.Rptr. 183, 546 P.2d 687] [holding that an administrative board has the choice of proceeding by

general rule or by ad hoc adjudication].) ▮ The CHRB is, therefore, well within the scope of its delegated authority in adopting a summary penalty rule rather than a case-by-case rule of determination. Such a rule does work to fully and effectively implement the purposes and intent of the Horse Racing Law which, as stated by the statute, is to "preserve and enhance the integrity of horseracing . . . ." (§ 19580, subd. (a).)[6] Clearly, this was the rationale underlying the enactment of section 19582.5. The Legislature simply delegated to the CHRB the power to implement the method by which that policy would be effected. The legislative history supports the verity of this conclusion.

Assembly Bill No. 3149 as finally enacted was less stringent in its language than the original version. It was apparently the intent of the author of the bill, Assemblyman Curtis Tucker, to enact a statute which provided for mandatory disqualification upon a first offense of finding a prohibited drug substance in an official test sample. "The author believes that the imposition of mandatory suspensions and permanent revocation of license for repeat violations will deter future violations and help reverse the perception that horse drugging was widespread." (Assem. Com. on Governmental Organization, Analysis of Assem. Bill No. 3149 (1993-1994 Reg. Sess.) (Apr. 19, 1994, see Analysis Dig.).) After two amendments, the bill was adopted in its present form, with the Legislature authorizing the CHRB to adopt regulations respecting penalties.

The respondents interpret the evolution of the statute from mandated summary disqualification to its present wording as an expression of legislative intent to the effect that disqualification of racehorses and forfeiture of purses should not be automatic but should occur only as a result of the exercise of discretion by the CHRB. To them, "exercise of discretion" means that if one reads section 19580, subdivision (a), together with section 19582.5, the wording mandates that CHRB regulations, at a minimum, include a procedure by which, in the absence of a finding of culpability for the presence of prohibited drugs, the CHRB would not impose the penalty of disqualification and forfeiture of purses. We do not agree.

First, section 19580 in clear, concise language states that the CHRB is empowered and shall adopt regulations and adopt policies and guidelines and penalties which will enhance and preserve the integrity of horse racing. The language of section 19582.5 is, similarly, not ambiguous. The opening sentence of section 19582.5 provides the CHRB with authorization to adopt

---

[6]Section 19580, subdivision (a), provides: "The board shall adopt regulations to establish policies, guidelines, and penalties relating to equine medication in order to preserve and enhance the integrity of horseracing in the state. Those policies, guidelines, and penalties shall include, at a minimum, the provisions set forth in this article."

regulations which prohibit the entry of a horse in a race if it is found that the horse has tested positive for an offending drug. The second sentence states that where a prohibited drug has been revealed in a test sample, the horse may be summarily disqualified. This language does not imply, suggest or require the CHRB to engage in an exercise of choice between disqualification and some lesser penalty. The language provides no implication or suggestion that the CHRB must, as a condition precedent to disqualification, ascertain whether culpability exists with respect to the manner in which the drug entered the horse's system. Inasmuch as the CHRB has the power to enact a no tolerance rule, and given that the rule does not conflict with the legislative scheme by which the CHRB is empowered, the argument put forth by respondents has no merit. The administrative agency has broad latitude to enact regulations so long as they are not in conflict with the empowering legislation and are reasonably necessary to effectuate its purpose. Our task is to ascertain whether the rule enacted by the CHRB reasonably interprets the legislative mandate. "Our function is to inquire into the legality of the regulations, not their wisdom." (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) Respondents' discontent with the CHRB rule is a matter to be taken to the CHRB and/or to the legislative body.

Rule 1859.5 is not in conflict with the statute in question since a plain reading of "may" be "summarily" disqualified informs the reader that the CHRB is invested with the option to disqualify a racehorse summarily without hearing. Clearly, in its discretion, the CHRB may elect to impose the disqualification penalty repeatedly. A declaration of ineligibility in every instance of violation does not mean that discretion has not been exercised. It means only that the CHRB has made the decision, within its discretionary and plenary powers, that a general rule of blanket disqualification is the most effective statutory implement to accomplish its objective of allowing only drug-free horses to race. A rule which pronounces unequivocally that any contaminated horse will not be permitted to win a race is consistent with the CHRB's responsibility to protect the integrity of the sport of horse racing and is, therefore, not unreasonable. We find that, contrary to the urging of the respondents, this strict rule is consonant with the provisions of the Horse Racing Law.

We find no conflict between the CHRB rule and the statute for another reason. The rule was enacted in 1983 and had, therefore, been in force for some 11 years when the statute was enacted on February 23, 1994. The statute became effective on January 1, 1995. If it was the intent of the Legislature to nullify the no tolerance policy of the CHRB, of which the Legislature is deemed to have been cognizant, it seems manifest that language to accomplish that purpose would have been put into the statute. The

Legislature would have included language in the statute ensuring that a hearing and findings precede any disqualification and forfeiture, had that been its intent.

### DISPOSITION

We hold that CHRB rugulation 1859.5 does not conflict with and is not in violation of section 19582.5 of the Business and Professions Code. The judgment of the trial court is therefore reversed and the court is directed to enter an order denying the petition for a writ of mandate.

Appellant is to recover costs.

Spencer, P. J., and Ortega, J., concurred.