[No. H036616. Sixth Dist. Nov. 18, 2011.]

COMMUNITY WATER COALITION, Plaintiff and Appellant, v.
SANTA CRUZ COUNTY LOCAL AGENCY FORMATION
COMMISSION, Defendant and Respondent;
CITY OF SANTA CRUZ et al., Real Parties in Interest and Respondents.

1318

**1320**

COUNSEL

Wittwer & Parkin, Jonathan Wittwer, William P. Parkin, Gary A. Patton and Ryan Moroney for Plaintiff and Appellant.

Dana McRae, County Counsel, and Rahn Garcia, Chief Deputy County Counsel, for Defendant and Respondent.

Meyers, Nave, Riback, Silver & Wilson, Amrit S. Kulkarni, Julia L. Bond; Charles F. Robinson and Kelly L. Drumm for Real Parties in Interest and Respondents University of California, Regents of the University of California and University of California Santa Cruz.

Atchison Barisone Condotti & Kovacevich and John G. Barisone, City Attorney, for Real Parties in Interest and Respondents City of Santa Cruz and City Council of the City of Santa Cruz.

OPINION

**PREMO, Acting P. J.—**

## I. INTRODUCTION

The University of California Santa Cruz (UCSC) filed an application with the Santa Cruz County Local Agency Formation Commission (LAFCO), requesting approval of an agreement between it and the City of Santa Cruz (City) pursuant to which City would extend water and sewer services to UCSC's north campus, an

area that is outside City's jurisdictional boundaries. Seeking to halt LAFCO's consideration of the application, appellant Community Water Coalition filed a complaint and petition for writ of mandate (Code Civ. Proc., § 1085), contending that LAFCO had no jurisdiction to consider the application since the prospective recipient of the services, rather than the service provider, had filed it. Even though City was a party to the agreement for which UCSC sought LAFCO approval, and even though LAFCO procedures required City to submit a letter stating that it was willing to provide the services if LAFCO approved, appellant maintained that under Government Code section 56133,[1] LAFCO had to dismiss the matter because City had not filed the application in its own name. The trial court sustained a demurrer without leave to amend, concluding that the operative subdivision of section 56133 does not specify which party must request LAFCO's approval.

Although we disagree with the trial court's interpretation of section 56133, we affirm the judgment. Under section 56133, the city or district that proposes to provide services outside its jurisdictional boundaries must request and receive approval from its local LAFCO. But the LAFCO's jurisdiction does not depend upon the identity of the person who filled out the application. The Legislature has given the LAFCO's power to decide whether to allow an extraterritorial extension of urban services. The fact that the prospective recipient of the services filed the application does not prevent the LAFCO from ruling upon the request so long as the city or district that will provide the services is a party to the agreement for which LAFCO approval is sought and is required to join the request by affirmatively indicating its willingness to provide the services.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In or about 2005 UCSC approved a long-range development plan that called for a significant expansion of its student population and the addition of 3,175,000 gross square feet of building space. Concerned about the impact the proposed expansion would have upon City services, City and others attacked the plan with lawsuits of their own. In August 2008 those actions were resolved by a comprehensive settlement agreement. As part of that agreement, UCSC agreed to apply to LAFCO for an extension of City water and sewer services to the north campus area where a portion of the new construction would be located. City agreed to obtain LAFCO's approval to amend its sphere of influence to encompass the north campus area. Thereafter, UCSC submitted application No. 929 for extension of the water and sewer services and City applied to amend its sphere of influence.

---

[1] Hereafter, all unspecified section references are to the Government Code. Unspecified subdivision references are to the subdivisions of section 56133.

Appellant filed suit against LAFCO on May 5, 2010. The suit included a petition for writ of mandate and requests for declaratory relief and an injunction. UCSC, University of California, Regents of the University of California, City, and the Santa Cruz City Council were identified as real parties in interest.[2] (We shall refer to LAFCO and real parties in interest, collectively, as respondents.) The entire matter was based upon appellant's reading of section 56133, subdivision (a), which, according to appellant, gave LAFCO jurisdiction to consider the request to extend services only if City filed the application. Respondents demurred, arguing that under section 56133 there were circumstances that required City to be the applicant and others that did not. According to respondents, application No. 929 falls under section 56133, subdivision (b), which says nothing about which party must make the application.

On August 20, 2010, the trial court ruled tentatively to sustain the demurrer, stating, "I am concluding that the respondent's view is the appropriate interpretation of Government Code Section 56133." The court's tentative ruling was that the pleading defect could not be cured "because it's based on what I believe is a good faith yet erroneous interpretation of the statute."

Appellant requested the opportunity to file an amended pleading, arguing: "We did not have the legislative history at the time we drafted our petition. We should be allowed to allege that and, you know, make the record clear as to what the basis of our position is." The court revised its tentative ruling, "in order to make certain that everyone has an opportunity to be completely heard" and sustained the demurrer with leave to amend, giving appellant 30 days to file an amended pleading.

Appellant's amended pleading added the allegation that the legislative history supported its reading of section 56133. It also attacked the environmental impact report (EIR) City had recently certified, which pertained to the proposed extension of water and sewer services to UCSC's north campus area. The amended pleading added City as a defendant and alleged that City's certification of the EIR violated the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.; CEQA).

Respondents again demurred and real parties in interest also filed a motion to strike the CEQA cause of action on the ground that it exceeded the scope

---

[2] UCSC and the University of California maintain that they are not subject to LAFCO's jurisdiction and have reserved their right to assert this jurisdictional bar in the event its service extension request is not approved. We express no opinion on this issue.

of the trial court's ruling. The trial court sustained the demurrer and granted the motion to strike. Judgment was entered February 7, 2011. This timely appeal followed.

### III. THE DEMURRER

#### A. Standard and Scope of Review

When an appeal is from a judgment after a demurrer is sustained without leave to amend, our task is to determine whether the complaint states facts sufficient to constitute a cause of action. "[W]e treat the demurrer as admitting the complaint's well-pleaded allegations of material fact, but not its contentions, deductions or conclusions of law." (*Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 924 [70 Cal.Rptr.3d 382, 174 P.3d 200].) "[O]ur review is de novo." (*TracFone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1363 [78 Cal.Rptr.3d 466].) Indeed, appellant's whole case turns upon the meaning of section 56133, a purely legal question calling for the independent standard of review. (*San Miguel Consolidated Fire Protection Dist. v. Davis* (1994) 25 Cal.App.4th 134, 146 [30 Cal.Rptr.2d 343].) We conduct that review pursuant to settled rules.

■ The fundamental goal of statutory construction is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent we first look to the words of the statute, giving the language its usual, ordinary meaning. We construe the words of the statute in context, keeping in mind the statutory purpose. Statutes or statutory sections relating to the same subject must be harmonized to the extent possible. Where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation. Both the legislative history and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

#### B. The Statutory Scheme

■ The Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (the act) (formerly the Cortese-Knox Local Government Reorganization Act of 1985) (§ 56000 et seq.) was enacted "to encourage 'planned, well-ordered, efficient urban development patterns with appropriate consideration of preserving open-space [and agricultural] lands within those patterns' [citation],

and to discourage urban sprawl and encourage 'the orderly formation and development of local agencies based upon local conditions and circumstances.' " (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 495 [87 Cal.Rptr.2d 702, 981 P.2d 543].) A LAFCO is the administrative body within each county that oversees urban development. A LAFCO "has only those express (or necessarily implied) powers which are specifically granted to it by statute." (*City of Ceres v. City of Modesto* (1969) 274 Cal.App.2d 545, 550 [79 Cal.Rptr. 168].) A LAFCO's powers are set forth in section 56375. Most pertinent to this case, section 56375, subdivision (p) provides that a LAFCO has the power and duty "[t]o authorize a city or district to provide new or extended services outside its jurisdictional boundaries pursuant to Section 56133." Section 56133 provides, in pertinent part:

"(a) A city or district may provide new or extended services by contract or agreement outside its jurisdictional boundaries only if it first requests and receives written approval from the [LAFCO] in the affected county.

"(b) The [LAFCO] may authorize a city or district to provide new or extended services outside its jurisdictional boundaries but within its sphere of influence in anticipation of a later change of organization.

"(c) The [LAFCO] may authorize a city or district to provide new or extended services outside its jurisdictional boundaries and outside its sphere of influence to respond to an existing or impending threat to the public health or safety of the residents of the affected territory if both of the following requirements are met:

"(1) The entity applying for the contract approval has provided the [LAFCO] with documentation of a threat to the health and safety of the public or the affected residents.

"(2) The [LAFCO] has notified any alternate service provider . . . that has filed a map and a statement of its service capabilities with the [LAFCO].

"(d) The executive officer [of the LAFCO], within 30 days of receipt of a request for approval by a city or district of a contract to extend services outside its jurisdictional boundary, shall determine whether the request is complete . . . ." "When the request is deemed complete, the executive officer shall place the request on the agenda . . . . [LAFCO] or executive officer shall approve, disapprove, or approve with conditions the contract for extended services."

Section 56133 concludes with subdivision (e), which describes the circumstances to which the section does not apply. Our principal concern is with subdivisions (a), (b), and (c).

## C. Discussion

As set forth above, section 56133, subdivision (a) requires that a city or district may provide extraterritorial services *"only if it first requests* and receives written approval" from the local LAFCO. (Italics added.) Appellant interprets this to mean that the city or district must initiate the request for approval in all cases and that subdivisions (b) and (c) simply describe the two circumstances under which a LAFCO may authorize extraterritorial service. Respondents contend that subdivision (a) applies to the situation where a city or district wants to extend services outside its jurisdictional boundaries and outside its sphere of influence, subdivision (b) applies to requests to extend services outside jurisdictional boundaries but within the sphere of influence, and subdivision (c) applies to requests for services outside the sphere of influence when public safety or health is at risk.[3] In the first situation, they say, the city or district must make the request. In the remaining two situations, it does not matter who initiates the request for approval since neither subdivision (b) nor (c) specifies who the requester must be. Since UCSC's request fell under subdivision (b), the identity of the requester is not a problem.

Ignoring for the moment the question of who must make the request, we see that subdivision (a) does something different than subdivisions (b) and (c) do. Subdivision (a) begins by stating that a city or special district "may provide" services outside its borders only if the LAFCO approves. Subdivisions (b) and (c) begin by stating that a LAFCO "may authorize a city or district" to provide services outside its borders in certain situations. Plainly, subdivision (a) limits the power of a city or district; subdivisions (b) and (c) grant power to the LAFCO. That is, a city or district may extend services outside its jurisdictional boundaries only if the LAFCO approves and the LAFCO may approve in the circumstances described in section 56133,

---

[3] "Sphere of influence" is defined by section 56076 as: "a plan for the probable physical boundaries and service area of a local agency, as determined by the [LAFCO]." "In this sense, a 'sphere of influence' is a prospective measure, charting what a city's or a district's boundaries might be at some future point." (*Modesto Irrigation Dist. v. Pacific Gas & Electric Co.* (N.D.Cal. 2004) 309 F.Supp.2d 1156, 1159, fn. 4.) The act does not define the phrase "jurisdictional boundary." In any event, jurisdictional boundaries are *"de facto* less expansive than 'spheres of influence.' " (309 F.Supp.2d at p. 1167, fn. 21; see § 56133.)

subdivisions (b) and (c). (Cf. *Modesto Irrigation Dist. v. Pacific Gas & Electric Co., supra*, 309 F.Supp.2d at p. 1161, noting, "Subsections (b) and (c) of section 56133 posit the limited contexts in which a LAFCO *may* authorize a city or district to provide new or extended services outside its jurisdictional boundaries . . . .") Subdivision (d) describes the process and confines the LAFCO's responses to approval, disapproval, or approval with conditions.

To the extent there is any ambiguity, the legislative history, which appears in the record, supports our interpretation. Section 56133 was first enacted in 1993 as part of Assembly Bill No. 1335 (1993–1994 Reg. Sess.). Senate analysis of the bill explained, "Regulating city and special district boundaries usually regulates where a city or district provides services. However, LAFCOs complain that some local agencies circumvent the Legislature's intent by merely signing contracts to serve outside their boundaries without ever changing their boundaries. [¶] Assembly Bill [No.] 1335 requires cities and districts to first obtain LAFCO approval before they can contract or agree to provide new or extended services outside their boundaries. Anticipating boundary changes, LAFCO can approve service extensions within city or district sphere of influence." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1335 (1993–1994 Reg. Sess.) as amended Aug. 30, 1993, p. 2.)

As enacted by Assembly Bill No. 1335 (1993–1994 Reg. Sess.), former section 56133 provided, without any subdivisions: "A city or district may provide new or extended services by contract or agreement outside its jurisdictional boundaries only if it first requests and receives written approval from the [LAFCO] in the affected county. [LAFCO] may authorize a city or district to provide new or extended services outside its jurisdictional boundaries but within its sphere of influence in anticipation of a later change of organization. This section does not apply to [specified contracts or agreements]." (Stats. 1993, ch. 1307, § 2, p. 7742.) Under respondents' interpretation, the first sentence of the law as originally enacted would cover the case where services are to be extended outside the sphere of influence. But there is nothing to that effect in the language of the newly enacted law and the Senate analysis suggests that the first sentence was merely intended to restrict cities and districts from expanding without oversight by their local LAFCO.

A subsequent amendment to section 56133 further undermines respondents' interpretation. In 1999, a situation had arisen in which the City of Cochran wanted to extend water services outside its sphere of influence to aid

farmers whose wells had failed. According to legislative analysis of Senate Bill No. 807 (1999–2000 Reg. Sess.), "[b]ecause the property was outside the City's sphere of influence and would never annex to Cochran, city officials couldn't ask the [LAFCO] for approval." (Sen. Local Government Com., analysis of Sen. Bill No. 807 (1999–2000 Reg. Sess.) Apr. 21, 1999, p. 1.) The analysis went on to note, "LAFCOs want the Legislature to allow services outside spheres of influence to correct public health and safety problems such as failing septic tanks and water wells." (*Id.* at p. 3.) Senate Bill No. 807 amended section 56133, designating the first sentence of the original section as subdivision (a) and the second sentence as subdivision (b), and adding subdivision (c), which, for the first time, specifically authorized a LAFCO to approve the extension of services outside a city's sphere of influence. (Stats. 1999, ch. 779, § 1, p. 5614.)

In short, respondents' argument that section 56133, subdivision (a) applies only where the city or district seeks to extend services outside its sphere of influence is belied by the plain language of the section and its legislative history. Section 56133, subdivision (a) was and is a limitation upon the power of cities and districts to expand urban services beyond their borders. Subdivisions (b) and (c) describe the two situations in which a LAFCO is authorized to approve such an expansion. Thus, respondents cannot avoid application of subdivision (a). But that is not fatal to their defense.

■ Turning now to the jurisdictional issue, we note that subdivision (a) of section 56133 clearly states that the city or district may extend its services outside its jurisdictional boundaries "only if it first requests and receives" written approval from LAFCO. We agree with appellant that "it" means the city or district. We disagree that a LAFCO's jurisdiction turns upon the identity of the person who filled out the application.

■ Under section 56300, subdivision (a), each LAFCO establishes its own written policies. In Santa Cruz, LAFCO's written policy relating to section 56133 states, "Except for the specific situations exempted by Government Code Section § 56133, [*sic*] a city or district shall not provide new or extended services to any party outside its jurisdictional boundaries unless it has obtained written approval from the [LAFCO]." The policy further specifies, "Individual requests for extraterritorial service shall be filed with the Executive Officer on a prescribed application form. The applicant shall pay the costs of processing the application . . . . [¶] The Executive Officer shall not file the application unless the affected public agency has submitted a written endorsement indicating its willingness to provide the service if [LAFCO] approves the request."

██ Appellant argues that LAFCO's practice of accepting individual requests allows the city or district to avoid LAFCO jurisdiction and thereby avoid being bound by any conditions of approval LAFCO may decide to impose. Appellant's argument seems to invoke the concept of personal jurisdiction, a concept related to a person's right to due process, which typically applies in adjudicative matters. (Cf. *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 100 S.Ct. 559]; 2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 109, pp. 684–685.) But the nature of the power exercised in forming and expanding cities and towns is legislative and political, not judicial. (*Bookout v. Local Agency Formation Com.* (1975) 49 Cal.App.3d 383, 386–387 [122 Cal.Rptr. 668].) Here, the controlling legislation is section 56133, subdivision (a): No city or district may extend its services beyond its jurisdictional borders absent written approval from LAFCO. Consequently, there is no support for the argument that by allowing the prospective recipient of the services to file the application City may somehow avoid complying with whatever conditions LAFCO may decide to impose. The application is merely that which triggers LAFCO's review. City is permanently constrained by section 56133, subdivision (a) from providing extraterritorial services absent written approval from LAFCO.

██ In any event, the process utilized by LAFCO in Santa Cruz does not conflict with the requirements of section 56133, subdivision (a). As the record reflects, many LAFCO's require the city or district to file the application for extraterritorial services. In Santa Cruz, LAFCO's policy allows for individual applications but the executive officer may not file any such application absent a "will-serve" endorsement from the city or district. "It is a well-settled principle of administrative law that in the absence of an express statutory directive to the contrary, an administrative agency may exercise its discretion in selecting the methodology by which it will implement the authority granted to it." (*Lavin v. California Horse Racing Bd.* (1997) 57 Cal.App.4th 263, 268 [66 Cal.Rptr.2d 843].) While the LAFCO policy in Santa Cruz allows the recipient to initiate an application for approval, it ensures that the provider has actually agreed to provide the services and joins the individual request for approval of the agreement. This is perfectly consistent with section 56133, subdivision (a) in that it requires City to request and receive written approval from LAFCO before extending services outside its borders.

██ Finally, appellant maintains that the process undertaken by respondents here "evades compliance with the City's General Plan." We do not see how the identity of the applicant has anything to do with City's general plan. The argument attacks the substance of the agreement between UCSC and City. Indeed, much of appellant's argument on appeal relates to the validity of

City's agreement to extend water and sewer services to UCSC's north campus. But that is not the issue that is before us. The issue is whether LAFCO has power to consider the request to approve that agreement. We conclude that it does. Since the sole basis for the action is appellant's contention that LAFCO lacked such power, the trial court did not err in sustaining the demurrer. (See *People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704] [we uphold the trial court's decision if right upon any applicable theory of the law].)

## IV. THE MOTION TO STRIKE

Appellant argues that the trial court erred in striking its newly added CEQA cause of action. Our review is for abuse of discretion. (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 [107 Cal.Rptr.2d 489].)

It is the rule that when a trial court sustains a demurrer with leave to amend, the scope of the grant of leave is ordinarily a limited one. It gives the pleader an opportunity to cure the defects in the particular causes of action to which the demurrer was sustained, but that is all. (*People ex rel. Dept. Pub. Wks. v. Clausen* (1967) 248 Cal.App.2d 770, 785–786 [57 Cal.Rptr. 227].) "The plaintiff may not amend the complaint to add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend." (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023 [111 Cal.Rptr.3d 20].)

Appellant maintains that the amendment is within the scope of the trial court's orders because it is based upon the same legal contention at issue in the original pleading, namely that LAFCO lacked jurisdiction over application No. 929. Since we have rejected that legal contention, the argument is unavailing. To the extent the amendment adds new facts attacking the substance of City's agreement with UCSC, it goes beyond the scope of the trial court's ruling.

When the trial court sustained respondents' demurrer the court granted leave to allow appellant to incorporate the legislative history of section 56133 into its pleading. The ruling was in response to appellant's counsel's request to, "make the record clear as to what the basis of our position is." Instead, the amendment added a new cause of action, naming a new defendant (City), and alleging facts unrelated to the interpretation of section 56133. Accordingly, the trial court correctly granted the motion to strike the new cause of action because it was "not drawn or filed in conformity with . . . an order of the court." (Code Civ. Proc., § 436, subd. (b).)

## V. DISPOSITION

The judgment is affirmed.

Duffy, J.,* and Walsh, J.,† concurred.

A petition for a rehearing was denied December 9, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 1, 2012, S198972. Liu, J., did not participate therein.

---

*Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

†Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.