Filed 10/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHARLES FIPKE, | B299810 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS174479) |
| v. | |
| CALIFORNIA HORSE RACING BOARD, | |
| Defendant and Respondent; | |
| JOEL ROSARIO, | |
| Real Party in Interest and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Chalfant, Judge. Reversed and remanded with directions.

Carlo Fisco; Law Offices of Darrell J. Vienna and Darrell J. Vienna for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Miguel A. Neri and Michael Purcell, Deputy Attorneys General, for Defendant and Respondent.

Licht & Licht and Roger H. Licht, for Real Party in Interest and Respondent Joel Rosario.

Appellant Charles Fipke is the owner of a racehorse that won the 2017 Breeders' Cup Distaff race. Fipke had initially named real party in interest Joel Rosario as the jockey for the race, but prior to the draw, he removed Rosario and named a different jockey. After learning of the substitution, the race stewards awarded Rosario a "double jockey fee," which entitled him to the same fee earned by the jockey who replaced him. Fipke challenged the decision, which was subsequently upheld by the California Horse Racing Board (CHRB) and the superior court. On appeal, Fipke contends that Business and Professions Code section 19500[1] prohibits stewards from awarding a double jockey fee to a rider, like Rosario, who is removed from a mount prior to the draw. We agree and therefore reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. Fipke is the owner of a thoroughbred racehorse named Forever Unbridled. The horse was scheduled to run in the Breeders' Cup Distaff race on November 3, 2017, which carried a purse of $2 million. The draw for the race—which is the point when post positions are selected and jockey assignments finalized—was scheduled for October 30 at 5:00 p.m. Any jockey changes made after the draw must be approved by the race stewards.

The day before the draw, Forever Unbridled's trainer entered the horse in the race and named Rosario as the jockey. This is referred to as giving Rosario "the call." The next morning, Fipke told the trainer to remove Rosario as the jockey and instead name John Velazquez. Fipke thought Rosario had ridden one of his horses poorly in a prior race, and he was upset that

---

[1] All further undesignated statutory references are to the Business and Professions Code.

Rosario was unwilling to ride some of his other horses. At Fipke's direction, prior to the draw, the trainer removed Rosario as the jockey and named Velazquez instead.

Rosario was unable to secure another mount for the race, and he complained to the stewards about Fipke's decision. After conducting a brief and informal investigation, the stewards informed Fipke he faced a possible fine or double jockey fee if he did not reinstate Rosario. A double jockey fee entitles the substituted jockey to the same fee earned by the jockey that rides the horse. Because a jockey's fee typically depends on the horse's performance, the amount of a double jockey fee is not known until after the race is completed.

Two days before the race, the stewards awarded a double jockey fee to Rosario, which they memorialized in their weekly minutes. The decision stated, in relevant part, "we [the stewards] unanimously determined that Joel Rosario had been given the call on the horse, and therefore was precluded from looking for other mounts in the race. We informed all parties involved that Mr. Rosario would be awarded a double jockey fee, meaning he would earn whatever Mr. Velazquez earns in the race." The decision did not cite any regulatory or statutory authority for the award.

Forever Unbridled subsequently won the race, which resulted in Velazquez earning a $110,000 riding fee. Pursuant to the steward's double-jockey-fee decision, Rosario also was entitled to receive $110,000, which would be assessed against the horse's winnings.

*CHRB Decision*

Fipke appealed the decision to CHRB, partially on the basis that the stewards did not have the authority to award a double

jockey fee under the circumstances. A CHRB-appointed hearing officer upheld the stewards' decision after conducting an evidentiary hearing. In a proposed decision that was subsequently adopted by CHRB, the officer concluded the stewards had authority to award the double jockey fee pursuant to CHRB Rule 1791 (Cal. Code Regs., tit. 4, § 1791), which gives stewards the power to decide "conflicting claims for the services of a jockey . . . ."

The officer noted his conclusion was "somewhat further strengthened and supported" by two other regulations. The first, Rule 1632 (Cal. Code Regs., tit. 4, § 1632), concerns jockey riding fees and states: "If there is a substitution of jockeys, no additional jockey fee or double jockey fee need be paid except when ordered by the stewards." (Cal. Code Regs., tit. 4, § 1632, subd. (c).) The officer noted the rule was not directly on point because it applies only if the jockey is replaced after the draw; here, the change occurred before the draw. Nevertheless, the officer found that because the change occurred mere hours before the draw, it was essentially a "jockey substitution situation."

The officer also cited Rule 1530 (Cal. Code Regs., tit. 4, § 1530), which states: "Should any case occur which may not be covered by the Rules and Regulations of the Board or by other accepted rules of racing, it shall be determined by the stewards in conformity with justice and in the interest of racing." The officer found the double jockey fee award conformed with justice and the interest of racing, noting the stewards regularly award double jockey fees in similar situations.

4

*Writ Petition*

Fipke challenged CHRB's decision via a writ petition filed pursuant to Code of Civil Procedure section 1094.5. The superior court upheld the decision in substantial part, although it disagreed with much of CHRB's reasoning. The court, for example, concluded Rule 1791—which was the primary basis for the administrative decision—was irrelevant because it does not concern conflicting claims over a jockey's right to ride a horse. The court similarly found Rule 1632 inapplicable.

Nonetheless, the court concluded Rule 1530 permitted the stewards to impose the double jockey fee as a "monetary penalty" for Fipke's abuse of the jockey-naming process. The court explained: "Rule 1530 could not be more broadly stated. It applies to any situation within the scope of the Board's authority which is not covered by the Rules or other accepted rules of racing. . . . This means that a situation need not be addressed by a specific rule if it falls within the scope of the Boards' authority. . . . [T]hat authority is plenary for supervision of racehorse meetings." The court, however, reduced the award by $10,000 pursuant to section 17661, subdivision (b), which limits monetary penalties to $100,000.

Fipke timely appealed.

## DISCUSSION

Fipke raises a new legal argument for the first time on appeal. He contends section 19500—which addresses compensation for jockeys removed from a mount before a race—implicitly precludes a double jockey fee award to a rider, like Rosario, who is removed prior to the draw. CHRB does not disagree with Fipke's reading of section 19500. However, it insists the statute is irrelevant because it concerns jockey

5

compensation, whereas here, the stewards imposed the double jockey fee as a penalty for Fipke's misconduct.  We agree with Fipke and hold section 19500 precluded the double jockey fee awarded to Rosario.[2]

## I.      Standard of Review

The facts of this case are undisputed.  The issue raised on appeal—whether the stewards had authority to award the double jockey fee—is a pure question of law that requires interpretation and construction of statutes and regulations.  Our review, therefore, is independent, meaning we are not bound by the superior court's determinations.  (*Lavin v. California Horse Racing Bd.* (1997) 57 Cal.App.4th 263, 267 (*Lavin*).)

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.  [Citation.]  We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.]  The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)  "If the plain language of a statute . . . is clear and unambiguous, our task is at an end and there is no need to resort to the canons of construction or extrinsic aids to interpretation." (*Butts v. Board of Trustees of California State University* (2014) 225 Cal.App.4th 825, 838.)

---

[2]      Although Fipke did not raise this argument below, we exercise our discretion to consider the issue because it presents a pure question of law.  (See *Henderson v. Pacific Gas & Electric Co.* (2010) 187 Cal.App.4th 215, 225 [reviewing courts have " 'discretion to consider a new issue on appeal where it involves a pure question of the application of law to undisputed facts' "].)

We apply these same rules to the construction of administrative regulations. (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 890.)

## II.    The Horse Racing Law and CHRB Rules

"The State of California regulates horse racing pursuant to the state's plenary police power." (*Lavin, supra*, 57 Cal.App.4th at p. 268.) The Legislature has exercised that power by enacting the Horse Racing Law, which is codified in section 19400 et seq.

The Horse Racing Law vests CHRB with jurisdiction and supervision over horse race meetings (§ 19420), as well as the authority to "prescribe rules, regulations, and conditions, consistent with the provisions of [the Horse Racing Law], under which all horse races with wagering on their results shall be conducted in this State" (§ 19562). CHRB is further vested with "all powers necessary and proper to enable it to carry out fully and effectually the purposes of [the Horse Racing Law]," (§ 19440, subd. (a)), including the power to impose monetary penalties for violations of the law (§ 19661, subd. (b)). CHRB may delegate to stewards "any of its powers and duties that are necessary to carry out fully and effectuate the purposes of this chapter." (§ 19440, subd. (b).)

In accordance with the statutory delegation of authority, CHRB has adopted numerous horse racing regulations that are codified in section 1400 et seq. of title four of the California Code of Regulations. We refer to these regulations as the CHRB Rules.

The CHRB Rules delegate considerable power to the stewards. Rule 1527, for example, grants stewards "general authority and supervision over all licensees and other persons attendant on horses . . . ." (Cal. Code Regs., tit. 4, § 1527.) Pursuant to Rule 1528, stewards "may suspend the license of

7

anyone whom they have the authority to supervise or they may impose a fine or they may exclude from all inclosures in this State or they may suspend, exclude and fine." (Cal. Code Regs., tit. 4, § 1528.) Rule 1530 provides, "[s]hould any case occur which may not be covered by the [CHRB Rules] or by other accepted rules of racing, it shall be determined by the stewards in conformity with justice and in the interest of racing." (Cal. Code Regs., tit. 4, § 1530.)

## III. Section 19500 Precluded the Stewards from Awarding a Double Jockey Fee to Rosario

The Horse Racing Law does not explicitly refer to "double jockey fees." However, the concept appears in section 19500, which addresses a jockey's entitlement to fees when removed from a mount prior to a race. In relevant part, section 19500 directs CHRB to adopt regulations, "consistent with the existing practice of stewards, that provide both of the following: (1) Establish the circumstances under which a jockey is entitled to receive a mount fee when he or she is removed from a mount prior to scratch time. (2) Establish the circumstances under which a jockey is entitled to receive both a mount fee and the riding fee when he or she is removed from a mount after scratch time." (§ 19500, subd. (b)(1), (2).)

The statute defines "mount fee" as the "fee that is paid a jockey who accepts a mount on a racehorse." (§ 19500, subd. (d)(3).) A "riding fee," in contrast, is defined as "the amount of money, whether calculated as a percentage of the purse or by any other means, that is due to a jockey in addition to the jockey mount fee as a result of the performance of a racehorse in a race." (§ 19500, subd. (d)(2).) The statute defines "scratch time" as the "time designated by the purse agreement when final changes in

8

racing programs must be made." (§ 19500, subd. (d)(1).) The parties agree that "scratch time" never occurs before the draw.

Although section 19500 grants CHRB considerable discretion to determine the circumstances under which a jockey removed from a mount is entitled to a riding fee, it imposes one implicit condition on the exercise of that discretion: the removal must occur after "scratch time." Had the Legislature not intended to impose such a condition, it could have provided a single direction to CHRB to establish the circumstances under which a jockey is entitled to receive a riding fee and/or a mount fee when removed from a mount. The Legislature instead chose to direct CHRB to separately address situations where a jockey is removed before and after scratch time; only in the latter circumstance did it specify the jockey might be entitled to a riding fee. The clear implication of this decision is that the Legislature intended jockeys removed from their mounts prior to scratch time would not be entitled to riding fees.

We have not located a CHRB regulation that directly implements section 19500. The closest candidate is Rule 1632, which sets out the fees owed to jockeys on winning and losing mounts. The rule specifies that a "jockey's fee is considered earned when the jockey is weighed out by the clerk of scales. The fee shall not be considered earned if the jockey elects to take himself off of his mount. If there is a substitution of jockeys, no additional jockey fee or double jockey fee need be paid except when ordered by the stewards." (Cal. Code Regs., tit. 4, § 1632, subd. (c).) Despite the clear mandate in section 19500, Rule 1632 does not expressly differentiate between jockeys removed before and after "scratch time." Nor does it differentiate between "riding fees" and "mount fees." Instead, it seems to use the terms

9

interchangeably. (See Cal. Code Regs., tit. 4, § 1632, subd. (b)(3), (5).)

We need not concern ourselves with these issues, however, because, no matter the CHRB regulations, section 19500 precluded the stewards from awarding a double jockey fee to Rosario. It is undisputed that Rosario was removed from his mount prior to the draw, which necessarily means he was removed prior to "scratch time." Under section 19500, therefore, he was not entitled to a "riding fee"; at most, he was entitled to a "mount fee." Nevertheless, the stewards awarded him a double jockey fee, which constituted a "riding fee" because it was directly tied to Forever Unbridled's performance in the race. The award, therefore, was inconsistent with section 19500. As such, it necessarily exceeded the scope of the stewards' authority and is void. (See *Hamilton v. Gourley* (2002) 103 Cal.App.4th 351, 363 [an administrative action that is not authorized by or is inconsistent with acts of the Legislature is void].)

Given our construction of section 19500, we need not consider whether the double jockey fee award was independently authorized under the CHRB Rules. This is because an "administrative agency may not adopt a regulation that exceeds the scope of, or is inconsistent with, the enabling statute." (*Bisno v. Santa Monica Rent Control Bd.* (2005) 130 Cal.App.4th 816, 821; see § 19562 [granting CHRB authority to prescribe rules, regulations, and conditions "consistent with the provisions of the [Horse Racing Law]"]; Gov. Code, § 11342.2 ["no regulation adopted is valid or effective unless consistent and not in conflict with the [enabling] statute and reasonably necessary to effectuate the purpose of the statute"].) Any CHRB Rule that would have authorized a double jockey fee award to Rosario

10

would necessarily be inconsistent with section 19500's implicit mandate that jockeys removed prior to the draw are not entitled to riding fees. Such a regulation, therefore, would be void. Accordingly, we need not consider whether the award was authorized under the regulations relied on by CHRB, Rosario, and the superior court, including Rules 1530, 1631, and 1791.

## IV. The Double Jockey Fee Award Was Not a Penalty

CHRB does not contest our construction of section 19500. Instead, it argues the statute is irrelevant because it concerns jockey compensation, whereas here, the stewards awarded the double jockey fee as a penalty for Fipke's misconduct. As a result, CHRB contends, to decide whether the double jockey fee was authorized, we must look to the statutes and regulations concerning the stewards' authority to impose penalties, such as section 19562 and Rules 1405, 1527, 1528, and 1530. Notably, CHRB advanced the complete opposite position in the superior court, arguing the double jockey fee was "not a penalty" designed to punish Fipke, but rather an "award to Rosario to compensate him for a loss." We agree with CHRB's initial position, as do Rosario and Fipke. For the reasons we discuss below, the double jockey fee award was not a penalty.[3]

---

[3] Whether the double jockey fee award was a penalty is a legal question that requires statutory and regulatory construction. Accordingly, contrary to CHRB's suggestions, we need not defer to the superior court's findings on the issue. (See *Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 ["Issues of statutory construction present questions of law, calling for an independent review by an appellate court."].) CHRB is also wrong to suggest Fipke forfeited any argument that the double jockey fee award was not a penalty by failing to adequately raise it on appeal. Fipke expressly argues in his opening brief the

11

## A. A Double Jockey Fee Award Is Not a Fine or Monetary Penalty

Although never stated explicitly, CHRB's primary contention seems to be that the double jockey fee awarded to Rosario was actually a fine imposed on Fipke. Generally, the term " 'fine' refers to a pecuniary punishment 'imposed as a punishment only.' [Citation.] In its ordinary meaning, it 'signifies a pecuniary punishment for an offense committed.' [Citations.] . . . 'A fine is a financial punishment for committing a wrong, and which fine is for the benefit of the public. . . .' " (*Sanders v. Pacific Gas & Elec. Co.* (1975) 53 Cal.App.3d 661, 676–677.) "Fines and penalties provided for in state statutes are required to be paid to the state in the absence of an express provision to the contrary." (*Id.* at p. 677; see Black's Law Dict. (11th ed. 2019), fine [a fine is "payable to the public treasury"].)

The Horse Racing Law and CHRB Rules set out specific requirements for the payment, collection, and disbursement of fines, which are consistent with the above principles. Rule 1532, for example, mandates "[a]ll fines imposed by the stewards . . . be paid by the person upon whom such fine has been imposed to the paymaster of purses . . . ." (Cal. Code Regs., tit. 4, § 1532, subd. (a).) The paymaster of purses, in turn, must forward the collected fines to CHRB's executive director. (Cal. Code Regs., tit. 4, § 1532, subd. (b).) Pursuant to section 19640, CHRB must then deposit "[a]ll money representing penalties or fines imposed by the stewards . . . in the State Treasury to the credit of the General Fund."

---

award to Rosario "was not and could not be a civil penalty." There is no forfeiture.

A double jockey fee, by its very nature, does not comply with these requirements. It is not paid to the paymaster of purses, forwarded to the CHRB executive director, or deposited in the State Treasury. Instead, such a fee is debited from a horse's earnings and paid directly to the jockey. These inherent characteristics demonstrate a double jockey fee is not a fine as that term is used in the Horse Racing Law and CHRB Rules.

In an effort to avoid this problem, the superior court concluded Rule 1530's "equitable principles of 'justice and the interest of racing'" permit stewards to order a fine be paid to a deserving third party, rather than CHRB. Tellingly, neither CHRB nor Rosario directly advances this argument on appeal. Likely, it is because the plain language of Rule 1530 authorizes no such thing.

Rule 1530 provides, in its entirety: "Should any case occur which may not be covered by the Rules and Regulations of the Board or by other accepted rules of racing, it shall be determined by the stewards in conformity with justice and in the interest of racing." (Cal. Code Regs., tit. 4, § 1530.) This language simply permits the stewards to determine novel cases; it does not authorize them to ignore existing requirements for the handling of fines while doing so. And, even if the regulation did authorize such conduct, it would be void as inconsistent with section 19640's mandate that CHRB deposit fines in the State Treasury. (See *Bisno v. Santa Monica Rent Control Bd., supra*, 130 Cal.App.4th at p. 821.)

13

The superior court alternatively suggested the double jockey fee was some form of "monetary penalty" that is distinct from a fine. Once again, neither CHRB nor Rosario directly advances this argument on appeal. In any event, as we discuss more fully in the next section, the stewards' authority to punish horse owners is limited to imposing fines, suspensions, and exclusions; they have no power to impose "monetary penalties" that are distinct from fines. (See Cal. Code Regs., tit. 4, § 1528.) Even if they did, section 19640 expressly requires "money representing penalties," i.e. monetary penalties, be deposited in the State Treasury. Because a double jockey fee award, by its very nature, does not comply with this requirement, it is not a monetary penalty, at least as the term is used in the Horse Racing Law.

## B. The Stewards Did Not Have Authority to Impose a Double Jockey Fee As a Novel Form of Punishment

In passing, CHRB seems to suggest the stewards had the authority to impose the double jockey fee as a penalty, even if it did not constitute a fine. This is because, according to CHRB, there are no limits to the forms of punishment the stewards may impose on horse owners. We disagree.

The stewards' authority to penalize horse owners is set out in Rule 1528, which states: "[Stewards] may suspend the license of anyone whom they have the authority to supervise or they may impose a fine or they may exclude from all inclosures in this State or they may suspend, exclude and fine." (Cal. Code Regs., tit. 4, § 1528.) The fact that the rule identifies three specific forms of punishment, without providing any suggestion that the list is non-exhaustive, is a clear indication that CHRB intended

14

the stewards' authority to be limited to those penalties. (See *O'Grady v. Superior Court* (2006) 139 Cal.App.4th 1423, 1443 ["the enumeration of things to which a statute applies is presumed to exclude things not mentioned"]; *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390 ["the fact that the Legislature expressly designated specific damage remedies while omitting others, . . . reflects that it intended the prescribed remedies to be exclusive."].) Indeed, if CHRB had intended for the stewards to have carte blanche to devise forms of punishment, there would have been no reason to specifically reference fines, suspensions, and exclusions. Instead, the rule could have simply granted the stewards general authority to impose penalties.

*Jamgotchian v. Slender* (2009) 170 Cal.App.4th 1384 (*Jamgotchian*), supports our conclusion. In that case, a horse owner brought an action against a steward for allegedly forcing a horse to race against the owner's wishes. The steward claimed he had immunity because his actions were authorized by Rule 1629, which permits stewards to discipline an owner who attempts to withdraw a horse from a race after scratch time. (Cal. Code Regs., tit. 4, § 1629.) The Court of Appeal rejected the claim, explaining that, although the steward had authority to discipline the owner, under Rule 1528, such authority was "limited to fines, suspension or exclusion of the person responsible. . . . [T]he regulations do not authorize any preemptive action by the stewards to prevent the failure of a horse to start." (*Jamgotchian, supra*, 170 Cal.App.4th at p. 1399.) Here, too, Rule 1528 limited the stewards' authority to punish Fipke to imposing a fine, suspending his license, and excluding him from inclosures. There is no CHRB Rule or provision of the Horse

15

Racing Law that authorized them to impose a form of punishment distinct from those penalties, at least under the circumstances here.

CHRB's reliance on *Lavin, supra*, 57 Cal.App.4th 263, is misplaced. In that case, owners challenged a CHRB regulation that summarily disqualified horses that tested positive for prohibited substances. The owners argued the regulation was inconsistent with statutory language suggesting CHRB must use discretion when disqualifying a horse. The court rejected the challenge, explaining: "A declaration of ineligibility in every instance of violation does not mean that discretion has not been exercised. It means only that the CHRB has made the decision, within its discretionary and plenary powers, that a general rule of blanket disqualification is the most effective statutory implement to accomplish its objective of allowing only drug-free horses to race. . . . We find that, contrary to the urging of the respondents, this strict rule is consonant with the provisions of the Horse Racing Law." (*Id.* at p. 270.)

According to CHRB, *Lavin* shows it has "great flexibility in deciding how to penalize racing competitors." While that may be true of CHRB and its rulemaking authority, it does not hold for the stewards, whose powers arise out of, and are limited by, the CHRB rules. As discussed above, under Rule 1528, the stewards' authority to penalize owners is restricted to imposing fines, suspensions, and exclusions. A double jockey fee is none of those. Accordingly, to the extent the stewards purported to impose the double jockey fee as a penalty, they acted in excess of their powers.

16

We also reject the superior court's brief suggestion, made at oral argument, that Rule 1530 grants the stewards authority to impose penalties beyond those identified in Rule 1528. Rule 1530 provides: "Should any case occur which may not be covered by the [CHRB Rules] or by other accepted rules of racing, it shall be determined by the stewards in conformity with justice and in the interest of racing." (Cal. Code Regs., tit. 4, § 1530.) According to the court, this language implicitly grants the stewards broad authority to impose "equitable" penalties when deciding novel cases.

The superior court's reading of Rule 1530 creates a conflict with Rule 1528, which restricts steward-imposed penalties to fines, suspensions, and exclusions. There is nothing in Rule 1528 to suggest its limitations do not apply to the sort of novel cases covered by Rule 1530. Nor is there anything in Rule 1530 to suggest an intention to create an exception to Rule 1528. When two regulations conflict, the more specific provisions take precedence over the more general ones. (See *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960.) As applied here, Rule 1528 would control because it contains more specific provisions regarding the stewards' authority to impose penalties. Therefore, even under the superior court's broad reading of Rule 1530, the stewards' power to penalize in novel cases would be limited to imposing fines, suspensions, and exclusions.

We are similarly unpersuaded by the superior court's conclusion that, although Rule 1632 does not apply to this case, it nonetheless demonstrates that a double jockey fee is a form of punishment authorized by the CHRB Rules. The court reasoned that, because Rule 1632 specifies a jockey who takes himself off a mount does not earn a riding fee, the stewards' discretion to

17

award a double jockey fee must be limited to situations where the rider is involuntarily removed. From this, the court inferred the purpose of a double jockey fee award under the rule is to sanction an owner for removing a jockey from a mount, rather than to compensate the rider.

In reaching this conclusion, the court overlooked the fact that an involuntary jockey substitution does not necessarily entail sanctionable conduct by the owner. Rule 1686, for example, permits an owner to substitute an overweight jockey. (Cal. Code Regs., tit. 4, § 1686.) Because such a substitution would be involuntary and occur after the draw, even under the superior court's narrow reading of Rule 1632, the stewards would be authorized to award a double jockey fee. If a double jockey fee were a penalty, as the court maintained, this would mean Rule 1632 authorizes the stewards to penalize an owner for conduct expressly permitted under the CHRB Rules. Such a result is absurd and provides further support for our conclusion that a double jockey fee award is not a penalty.[4]

---

[4] Because we conclude the double jockey fee awarded to Rosario was not an authorized form of punishment, we need not decide whether the stewards generally have the authority to penalize an owner for removing a jockey prior to the draw. We express no opinion on that issue.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the superior court with instructions to issue a writ of mandate requiring CHRB to vacate its decision denying Fipke's appeal and issue a new decision vacating the stewards' double jockey fee award.  Fipke shall recover his costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

WE CONCUR:


GRIMES, J.


STRATTON, J.

19